IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

HAMILTON KINARD, and BRITTANY  
KINARD,

    Plaintiffs,

v.

JOHN GALLINA, Individually and
as Agent of Purple Heart
Homes, Inc.,
DALE BEATTY, Individually and
as Agent of Purple Heart
Homes, Inc.,
ASHELY DOANE, Individually and
as Agent of Purple Heart
Homes, Inc.,
JIM LONCAR, Individually and
as Agent of Purple Heart
Homes, Inc., and
PURPLE HEART HOMES, INC.,

    Defendants.

CV 616-040

# O R D E R

The present action stems from an unfortunate dispute between a charity seeking to assist wounded veterans, Purple Heart Homes, Inc. ("Purple Heart Homes"), and a wounded veteran it sought to assist, Hamilton Kinard. At this stage the Court must determine if the complaint filed by Mr. Kinard and his wife contains claims for which the law provides a remedy and whether those claims are supported by factual allegations of sufficient

specificity. (Doc. 5.) The Court finds the complaint deficient in both regards.

## I. Background

Purple Heart Homes is a charity established by wounded veterans for wounded veterans. After sustaining serious injuries in Operation Iraqi Freedom, John Gallina and Dale Beatty saw a need for housing that could properly accommodate disabled veterans. (Doc. 5 at 2.) In 2008, they established Purple Heart Homes to address that need. (Id.)

Purple Heart Homes helps place veterans in new, handicap-accessible homes at a substantial discount. (Id.) It does this by requiring that participating veterans take out two loans, one worth approximately 20% of the home's value and a second worth the remaining amount. (Id.) If the veteran successfully pays off the 20% loan, then Purple Heart Homes waives repayment of the second loan. (Id.) Thus, qualifying veterans can receive handicap-accessible housing at a nearly 80% discount. (Id. at 3.)

On May 8, 2013, Plaintiffs entered into a contract ("the Contract") with Purple Heart Homes to purchase a house. (Doc. 1-2 at 3.) The Contract set the purchase price at $175,000, and it required Plaintiffs to obtain two loans: a "First Priority Loan" worth $31,500, and a "Second Priority Loan" worth $145,000. (Id.) The Contract also contained several important provisions. First, the Contract established that it, alone,

2

"shall be deemed to contain all of the terms and conditions agreed upon, it being understood that there are no outside representations, warranties, or agreements, either written or oral." (Id. at 6.) Second, it provided that "[t]he Buyer acknowledges that this is an 'AS IS' purchase. The Buyer is relying solely on his/her inspection of the Property and any private inspections that the Buyer chooses to obtain." (Id.) Third, the Contract specified that "the Seller cannot provide any warranty on any repairs or renovations that they had performed on the property." (Id.) Fourth, it admitted that "the Seller has agreed to perform certain repairs and modifications to the Property," and it listed those repairs in Exhibit D. (Id.) Finally, the Contract clarified that "the Buyer acknowledges that they have been advised to consult competent legal counsel before entering into a real estate purchase agreement," and "that a Private Home Inspection is recommended." (Id.)

On July 22, 2013, Plaintiffs gave a Promissory Note to Purple Heart Homes. (Doc. 1-2 at 16.) The Note provided that it should be marked "Paid and Satisfied" and the related security deed canceled within six months of either the Borrower successfully paying off the First Priority Loan or fifteen years, whichever occurred first. (Id.)

On February 15, 2016, Plaintiffs filed a lawsuit in state court. (Doc. 1-1 at 11.) Plaintiffs make three allegations in

3

their complaint. First, Plaintiffs allege that Defendants breached two separate contracts. (Id. at 12.) Plaintiffs allege that Defendants breached the original Contract for sale and a second, subsequent contract formed through the legal concept of novation. Plaintiffs claim damages in excess of $500,000 as a result of Defendants' alleged breach of both contracts.

Second, Plaintiffs allege that "Defendants were negligent in purporting to perform" the Contract. (Id. at 14.) Plaintiffs assert that "Defendants intentionally allowed inept and unqualified supervision and inept and unqualified volunteers to engage upon the repairs and construction promised." (Id.) Plaintiffs also assert that "Plaintiffs show that Defendants have exhibited a pattern of such breach of contract and such negligence in their prior dealings with other veterans." (Id.) Plaintiffs' complaint, however, does not provide any additional allegations detailing such prior negligence.

Finally, Plaintiffs allege a claim for stubborn litigiousness. (Id.) Plaintiffs allege only that "Defendants have acted in bad faith, have been stubbornly litigious, and have caused Plaintiffs undue and unnecessary trouble and expense in terms of O.C.G.A. § 13-6-11 and Plaintiffs are entitled to an award of reasonable attorney fees and their costs and expenses." (Id.) Plaintiffs provide no further details supporting this allegation.

In April 2016, Defendants removed the case to this Court, asserting diversity jurisdiction under 28 U.S.C. § 1331. (Doc. 1.) Plaintiffs made no attempt to amend their complaint after removal. Defendants now move to dismiss Plaintiffs' complaint. (Doc. 5.)

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 556 U.S. 544, 570 (2007)). Applying this standard requires a two-part test. See id. at 679. First, the Court asks whether the plaintiff has stated specific facts supporting a claim rather than mere legal conclusions. Id. Second, it asks whether those facts might plausibly give rise to a right to relief. Id. at 680.

The first prong of the inquiry requires that the plaintiff plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. While the Court must accept as "true all of the allegations contained in a complaint," it must not "accept as true a legal conclusion couched as a factual allegation." Id. Generalized conclusions and "bare allegations" will not allow the plaintiff to "unlock the doors

5

of discovery." See id. The plaintiff must assert specific facts that "show" the defendant's misconduct. Id. at 679.

Once the Court separates the specific factual allegations from mere legal conclusions, it must accept those facts as true and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Well-pleaded facts cannot be merely consistent with the alleged misconduct; they must allow the Court to infer that such misconduct was plausible. Id. at 678. Thus, facts which show only the possibility of misconduct are not enough. Id. The complaint must allege facts that push the claim "across the line from conceivable to plausible." Id. at 683.

Finally, while a plaintiff does not have to "allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007)(quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

### III. Discussion

Defendants' motion to dismiss challenges all the claims made by Plaintiffs in their complaint. Defendants argue that (1) the individual named Defendants were not party to the contract between Purple Heart Homes and Plaintiffs; (2) the terms of the Contract itself preclude any breach based upon the Plaintiffs' alleged facts; (3) Plaintiffs failed to sufficiently plead the material elements of a novation; (4) the intentional tort claim is not supported by law; and (5) Plaintiffs' stubborn litigiousness claims are conclusory allegations. The Court now addresses Defendants' arguments.

### A. Breach-of-Contract Claims

Plaintiffs' complaint alleges Defendants breached two contracts. First, they allege Defendants breached the original contract for sale. Second, they allege Defendants entered into a novation of the original contract, and that Defendants breached the new contract established by the novation.

### 1. Breach-of-Contract Claims against Named Defendants

The Court dismisses, at the outset, all breach of contract claims (for the alleged breach of either the Contract or the contract established by novation) against the named Defendants John Gallina, Dale Beatty, Ashley Doan, and Jim Loncar. The Court dismisses these claims because Plaintiffs never actually formed a contract with the named Defendants. Thus, they cannot claim that the named Defendants ever breached a contract.

7

Plaintiffs never formed a contract with the named Defendants because the named Defendants were only acting as agents for the corporation called Purple Heart Homes. Corporations are business organizations designed by the legislature to protect human decision makers from becoming personally liable for actions taken by the corporations they own or operate. Dep't of Transp. v. McMeans, 754 S.E.2d 61, 63 (Ga. 2014). As a result, "[a] cardinal precept of corporate law is that corporations are separate legal entities from their shareholders, officers, directors, and employees." (Id. at 63). Because a corporation is a separate legal entity, but not a natural person, it must act through agents. "It deals with other corporations and with natural persons by its agents; it can deal with the world in no other way." Eckles v. Atlanta Tech. Grp., Inc., 485 S.E.2d 22, 24-25 (Ga. 1997). Thus, an agent of a corporation can only be personally liable to a contract if a court ignores the corporate form by "piercing the corporate veil" or if the agent takes action to make himself a party to the contract in his personal capacity. Buffa v. Yellowbook Sales and Distrib. Co., 760 S.E.2d 644, 646 (Ga. Ct. App. 2014).

Because the named Defendants were mere agents of Purple Heart Homes, they cannot be bound by the contract Plaintiffs made with Purple Heart Homes unless they have taken some action to make themselves personally liable. Courts determine if

8

agents have made themselves personally liable by looking first at the plain language of the contract "to determine in what capacity [a] representative is bound." Buffa, 760 S.E.2d at 646. Here, the plain language of the Contract makes clear that Plaintiffs never entered into a contract with the named Defendants; they entered into a contract with Purple Heart Homes — a separate legal entity. But, even if the plain language of the Contract did not specifically preclude Plaintiffs' claim, Plaintiffs' complaint would fail because it makes no factual allegations plausibly showing that the named Defendants ever entered into a contract with Plaintiffs. Thus, Plaintiffs cannot sue the individual named Defendants for an alleged breach of either contract.

## 2. Breach of Original Contract by Purple Heart Homes

The Court now examines Plaintiffs' allegation that Purple Heart Homes breached the original contract for sale. "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." Dewrell Sacks, LLP v. Chicago Title Ins. Co., 749 S.E.2d 802, 806 (Ga. Ct. App. 2013). "A breach of contract may arise in any one of three ways, namely: by renunciation of liability under the contract; by failure to perform the engagement; or by doing something which renders performance impossible." Bd. of Regents

of the Univ. Sys. of Ga. v. Doe, 630 S.E.2d 85, 93 (Ga. Ct. App. 2006).

Plaintiffs' claim fails because Plaintiffs have not alleged sufficient facts to show that Purple Heart Homes breached the Contract. Plaintiffs allege that Purple Heart Homes assured them it would "repair and otherwise modify the said property from the As Is condition to make the property 100% handicap accessible and maintenance free." (Doc. 1-1 at 13.) They then allege only that Purple Heart Homes breached the Contract. Plaintiffs' complaint does not allege sufficient facts for two reasons.

First, the Contract itself makes this claim implausible. Although Plaintiffs failed to include a copy of the Contract in their complaint, Defendants included a copy in their notice of removal. See Speaker v. U.S. Dep't. of Health and Human Servs. Ctr. for Disease Control and Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010)(noting that "[i]n ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." (internal quotations omitted)). The Contract states that it "shall be deemed to contain all the terms and conditions agreed upon, it being understood that there are no outside representations, warranties, or agreements, either written or oral." (Doc. 1-2 at 6.) It then declares that the property is sold "AS IS" and that Plaintiffs are "relying solely on [their] inspection of the Property and any

private inspections that [they chose] to obtain." (Id.) It also waives all warranties on any repairs to the property Purple Heart Homes made prior to Plaintiffs' signing the Contract. Finally, it specifically enumerates the repairs and modifications Purple Heart Homes agreed to make after signing the Contract by listing them in Exhibit D of the Contract. (Id.) Nowhere does it state that Purple Heart Homes agreed to make the home "100% handicap accessible and maintenance free."

Second, Plaintiffs' allegations are conclusory. To state a plausible claim for relief, Plaintiffs must allege specific facts explaining how Purple Heart Homes "failed to perform" or showing what it did not do that it should have done. Plaintiffs, however, make no specific factual allegations showing what provisions of the Contract Purple Heart Homes breached. Plaintiffs allege only that Defendants "breached this Contract and the Novation and failed and refused to perform." (Doc. 1-2 at 13.) This is a conclusory allegation. Plaintiffs must provide allegations of greater specificity if they wish to draft a complaint with allegations that "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Because Plaintiffs have not provided any factual allegations supporting a plausible claim that Purple Heart Homes breached the Contract, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' claim that it breached the original contract for sale.

### 3. Breach of Contract Created through Novation

Plaintiffs also allege that Purple Heart Homes breached a second contract created through novation. The concept of novation in Georgia law is less than clear. The Georgia Code defines novation indirectly: "A simple contract regarding the same matter and based on no new consideration does not destroy another simple contract between the same parties; but, if new parties are introduced so as to change the person to whom the obligation is due, the original contract is at an end." O.C.G.A. § 13-4-5; see Georgia Contracts: Law and Litigation § 10:10. Georgia courts have likewise declined to clearly define novation, and instead offer four elements of a novation: "(1) a previous valid obligation, (2) the agreement of all the parties to the new contract, (3) the extinguishment of the old contract, and (4) the validity of the new one." River Forest, Inc. v. Multibank 2009-1 RES-ADC Venture, LLC, 771 S.E.2d 126, 130 (Ga. Ct. App. 2015). This Court understands novation under Georgia law to be, stated more directly, either (1) a substitution of a new party to the contract for an original party to the contract or (2) the intentional substitution of a new contract for an old contract. See Georgia Contracts: Law and Litigation § 10:10.

Plaintiffs contend that the parties entered into a novation which substituted a new contract for the old contract. Thus, to survive a motion to dismiss, Plaintiff must allege sufficient facts to make it plausible that (1) the parties intended to

substitute a new contract for their previous contract, and (2) the parties formed a valid second contract. The Court focuses on whether Plaintiffs' complaint provides sufficient factual allegations that the parties formed a valid second contract.

A valid contract requires "parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. Parties establish consideration when the party who makes the promise accrues any benefit and the party to whom the promise is made undergoes "any loss, trouble, or disadvantage." Mann Elec. Co. v. Webco S. Corp., 390 S.E.2d 905, 908 (Ga. Ct. App. 1990). Taking away the legalese, consideration exists when the parties exchange something of value: "I will give you my car if you give me $1." The party making the promise (the seller) receives a benefit of $1 in exchange for the loss of his car. The party to whom the promise is made (the buyer) undergoes a loss of $1 in exchange for the benefit of the car. Thus, the parties have exchanged something of value — the exchange need not be equal — and established consideration.

Parties assent "when the minds of the parties meet at the same time, upon the same subject-matter, and in the same sense." Cox Broadcasting Corp. v. Nat'l. Collegiate Athletic Assoc., 297 S.E.2d 733, 737 (Ga. 1982). That is, parties assent at the moment they agree to be bound by the terms of a contract <u>and</u>

they share a mutual understanding of the scope and obligations of the terms they are agreeing to. Plaintiffs, however, have alleged no facts supporting the existence of consideration or assent.

Plaintiffs have made no allegations showing the existence of consideration because they make no allegations of any new benefit gained or burden borne by either party. See O.C.G.A. § 13-4-5. Plaintiffs allege that the parties entered into the original contract on the assumption that Defendants would make the property "100% handicap accessible and maintenance free" regardless of the "AS IS" language in the contract. (Doc. 1-1 at 13.) Plaintiffs then allege that Defendants agreed to "fully repair and maintain their work" after they failed to perform their original duties under the contract. (Id.) Plaintiffs' complaint, however, makes no allegations of any new consideration. Rather, Plaintiffs aver only that Defendants agreed to do, for a second time, what they were already legally bound to do. But, even if true, this is not consideration, because "[a]n agreement on the part of one to do what he is already legally bound to do is not a sufficient consideration for the promise of another." Citizens Trust Bank v. White, 618 S.E.2d 9, 11-12 (Ga. Ct. App. 2005). Such an agreement is not sufficient consideration because the parties have not not exchanged anything of value. They have simply reaffirmed a previous commitment to which they were already legally bound.

Because Plaintiffs have not made any factual allegations showing the existence of new consideration, they have not made a plausible claim that the parties entered into a new contract through novation.

Similarly, Plaintiffs have not made sufficient factual allegations that Purple Heart Homes ever assented to a new contract, because they have not made any allegations supporting an inference that Purple Heart Homes and Plaintiffs agreed to replace the Contract with a new contract. When determining whether a party has assented to a contract, courts use an objective standard that asks whether a reasonable person would conclude that the contracting parties' actions manifested an intention to make an agreement. Moreno v. Smith, 788 S.E.2d 349 (Ga. 2016). Plaintiffs, however, make no factual allegations that show any intention by Purple Heart Homes to enter into a new contract. They make no factual allegations about how Defendant assented (whether orally, in writing, or through its actions) or when Defendant assented. Rather, they make a broad allegation that "when the obvious and egregious nature of the improper or lack of performance became known to and acknowledged by defendants, they agreed to fully repair and maintain their work, and thereby entered a Novation." (Doc. 1-1 at 13.) This is a conclusory allegation that, like the first breach of contract claim, also lacks the factual specificity necessary to

survive a motion to dismiss. Thus, the Court **GRANTS** Defendants' motion to dismiss this claim.

**B. Intentional Tort**

Plaintiffs' second claim asserts that "Defendants were negligent in purporting to perform this contract." (Doc. 1-1 at 14.) Plaintiffs' complaint, however, has no basis in law:

> It is well settled that mere failure to perform a contract does not constitute a tort. A plaintiff in a breach of contract case has a tort claim only where, in addition to breaching the contract, the defendant also breaches an independent duty imposed by law. This is true even in situations where the contract is breached in bad faith, where the courts have consistently held that punitive damages are not available because there has been no tort.

ServiceMaster Co. v. Martin, 556 S.E.2d 517, 521 (Ga. App. Ct. 2001). Accordingly, the Court **GRANTS** Defendants' motion to dismiss this claim.

**C. Stubborn Litigiousness**

Under O.C.G.A. § 13-6-11 "[t]he expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefore and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." The entirety of Plaintiffs' complaint on this count is "Defendants have acted in bad faith, have been stubbornly litigious, and have caused Plaintiffs undue and unnecessary trouble and expense in terms of O.C.G.A. § 13-6-11 and Plaintiffs are entitled to an

award of reasonable attorney fees and their costs and expenses." (Doc. 1-1 at 14.) Plaintiffs make no specific factual allegations supporting their claim. They merely recite the statutory language of § 13-6-11. Because Plaintiffs' complaint is the definition of a conclusory allegation, the Court **GRANTS** Defendants' motion to dismiss this claim.

**D. Plaintiffs' Supplemental Filings and Defendants' Response**

Finally, the Court turns its attention to the numerous filings made after Defendants filed their reply brief. In these filings, Plaintiffs attempted to support their complaint with additional documents not attached to or referenced in their complaint. Normally, courts limit their consideration of a complaint's sufficiency to the "four corners of the complaint." Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005). Courts may, however, consider documents outside the complaint if they are central to the Plaintiffs' claims and undisputed in authenticity — as this Court has already done when considering the contract for sale filed by Defendants. (Id.) Nevertheless, the Court declines to decide whether the supplemental documents should be considered when analyzing the sufficiency of Plaintiffs' complaint, because the Court finds that, even if the documents were accepted, they would not alter the Court's decision.

Plaintiffs' supplemental filings include (1) an email showing a purported promise, made in 2012, to build a house that is "100%

accessible and maintenance free" (doc. 7 at 1) and (2) an unsigned contract for sale of the house (docs. 29, 30). Both items are irrelevant, however, because the Contract, signed in 2013, specifically states that it is the final agreement, regardless of any previous written or oral representations made between the parties. See First Data POS, Inc. v. Willis, 546 S.E.2d 781, 784 (Ga. 2001) ("Where a conflict exists between oral and written representations, it has long been the law in Georgia that if the parties have reduced their agreement to writing, all oral representations made antecedent to execution of the written contract are merged into and extinguished by the contract and are not binding upon the parties."). Thus, Plaintiffs' supplemental filings, even if considered by the Court, would not have remedied the complaint's deficiencies.

### III. Conclusion

For the reasons stated above, Plaintiffs' complaint fails to adequately state a claim upon which relief can be grounded. Thus, the Court **GRANTS** Defendants' motion to dismiss with respect to all counts. (Doc. 5.) The Court dismisses Plaintiffs' complaint **WITH PREJUDICE**. The Clerk shall **CLOSE** this case and **TERMINATE** all deadlines.

**ORDER ENTERED** at Augusta, Georgia, this 18th day of May, 2017.

CHIEF JUDGE J. RANDAL HALL
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA